## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| KIM DAUGHERTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  1:20-cv-1393 |
| | ) | |
| THE FEDERAL SAVINGS BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER & OPINION

This matter is before the Court on Defendant's Motion to Dismiss for Failure to State a Claim. (Doc. 5). Plaintiff has responded (doc. 9), so the matter is ripe for review. For the following reasons, Defendant's Motion to Dismiss is granted.

### BACKGROUND[1]

Plaintiff Kim Daugherty brings this suit against Defendant Federal Savings Bank for alleged violation of the Electronic Fund Transfers Act ("EFTA"), 15 U.S.C. § 1693 *et. seq.* (Doc. 1). Plaintiff, a resident of McLean County, Illinois, opened an unsecured loan account with Defendant that was assigned a unique account number. (Doc. 1 at 2). Sometime thereafter, she encountered financial difficulties and fell behind on her payments toward the account. (Doc. 1 at 2).

On or around December 12, 2019, Plaintiff informed Defendant she would be filing for Chapter 13 bankruptcy and "no longer authorized any automatic payments

---

[1] Because the Court must accept all well-pleaded facts in the Complaint as true, *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018), the facts herein are drawn from the Complaint. (Doc. 1).

to be withdrawn from her bank account." (Doc. 1 at 2). On or around December 16, 2019, Defendant charged Plaintiff's "personal bank account"[2] in the amount of $935.14 without her authorization. (Doc. 1 at 2). The following day, Plaintiff demanded return of the unauthorized withdrawal and again told Defendant that it no longer had authorization to automatically withdraw payments from her bank account. (Doc. 1 at 3).

Defendant refused to refund the withdrawal, and, on January 15, 2020, charged Plaintiff's bank account in the amount of $935.14 for a second time without her authorization. (Doc. 1 at 3). That day, Plaintiff contacted Defendant, again demanding refund of the unauthorized withdrawals and stating it did not have her authorization to make automatic withdrawals from her bank account. (Doc. 1 at 3). Defendant responded that Plaintiff would need to fill out paperwork to get a refund. (Doc. 1 at 3). In total, Plaintiff alleges Defendant withdrew $1,870.28 from her bank account without authorization. (Doc. 1 at 3).

## LEGAL STANDARD

To survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint must contain a short and plain statement of the plaintiff's claim sufficient to plausibly demonstrate entitlement to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

---

[2] Plaintiff does not specify what bank held her "personal bank account."

662, 678 (2009). A plaintiff is not required to anticipate defenses or plead extensive facts or legal theories; rather, the complaint need only contain enough facts to present a story that holds together. *Twombly*, 550 U.S. at 570; *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). The Seventh Circuit has consistently noted the essential function of Rule 8(a)(2) is to put the defendant on notice. *Divane v. Nw. Univ.*, 953 F.3d 980, 987 (7th Cir. 2020) ("A complaint must give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." (internal quotation marks omitted)).

On review of a Rule 12(b)(6) motion, the Court construes the complaint in the light most favorable to the plaintiff. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). This means the Courts accepts all well-pleaded factual allegations as true and draws all reasonable inferences from those facts in favor of the plaintiff. *Id.* Allegations that are, in reality, legal conclusions are not taken as true and cannot survive a Rule 12(b)(6) challenge. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012).

If matters outside the pleadings are presented on a motion under Rule 12(b)(6), the Court must either exclude them from consideration or convert the motion to one for summary judgment under Rule 56 and afford both parties a reasonable opportunity to present supporting documentation. Fed. R. Civ. P. 12(d); *see also Berthold Types Ltd. v. Adobe Sys. Inc.*, 242 F.3d 772, 776 (7th Cir. 2001) ("A motion to dismiss must be *treated* as a motion for summary judgment if the judge *considers* matters outside the complaint, but the judge may elect to treat a

motion as what it purports to be and disregard the additional papers."). A "narrow exception" to this rule permits the Court to consider documents outside the four corners of the complaint on a motion to dismiss if they are explicitly or impliedly "referred to in the complaint and are *central* to [the] claim." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (quoting *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). Thus, "[a] motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

## DISCUSSION

The EFTA "protects consumers by providing a 'basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.'" *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1328 (7th Cir. 1997) (quoting 15 U.S.C. § 1693(b)). "Electronic Fund Transfers covered by the Act have three components: 1) a transfer of funds; 2) that is initiated by electronic means, and 3) debits or credits a consumer account." *Id.* Section 1693e(a) of the EFTA provides:

> A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made. *A consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer*. The financial institution may require written confirmation to be provided to it within fourteen days of an oral notification if, when the oral notification is made, the consumer is advised of such requirement and the address to which such confirmation should be sent.

4

(emphasis added).

Plaintiff alleges Defendant violated this section by initiating two electronic fund transfers out of her bank account after she gave timely oral instruction to Defendant to stop the automatic withdrawals. (Doc. 1 at 4). Plaintiff does not allege any facts suggesting she never *initially* gave adequate preauthorization for electronic fund transfers; she alleges that Defendant continued transfers after she notified it she "*no longer* authorized any automatic payments to be withdrawn from her bank account." (Doc. 1 at 2) (emphasis added). Thus, her claim arises not under the first sentence of Section 1693e(a) regarding initial preauthorization, but under the second "stop payment" sentence.[3]

Plaintiff seeks relief in the form of: statutory damages under 15 U.S.C. § 1693m(a)(2)(A); actual damages equal to the unauthorized amounts directly withdrawn from her account, 15 U.S.C. § 1693m(a)(1); costs and attorneys' fees, as provided by 15 U.S.C. § 1693m(a)(3); an injunction preventing further violations by Defendant; and any other relief deemed just and equitable. (Doc. 1 at 4–5). Defendant's arguments in support of its Motion to Dismiss the single-count Complaint will be addressed in turn.

---

[3] Indeed, Plaintiff's Response states "[Plaintiff's] Complaint sufficiently pleads that [Plaintiff] properly exercised her statutory right under the EFTA, 15 U.S.C. § 1693e, to stop payment of Defendant's *preauthorized* electronic fund transfer by notifying Defendant orally at least three business days preceding the scheduled date of such transfer, which stop payment request Defendant failed to honor twice over." (Doc. 9 at 13).

### I. Authorization Agreement

First, Defendant argues that Plaintiff signed an authorization agreement ("ACH Authorization") that "expressly provides" for written notice as "the sole method by which authorization may be withdrawn." (Doc. 6 at 4). Defendant urges the Court to consider the agreement, attached to Defendant's Motion to Dismiss, as "both referred to in the Complaint (by necessary implication) and central to [Plaintiff's] claim." (Doc. 6 at 4).

The Court declines to consider this document on the Motion to Dismiss because it is not central to Plaintiff's claim. *See Levenstein*, 164 F.3d at 347 (quoting *Wright*, 29 F.3d at 1248). Plaintiff claims Defendant's conduct violated her right under the second sentence of 15 U.S.C. § 1693e(a) to "stop payment" by oral notification at least three business days preceding the scheduled date of electronic transfer. The EFTA prohibits waiver of its protections by contract, 15 U.S.C. § 1693l, so plausibly alleging that Defendant violated this Section would be sufficient for Plaintiff to state a claim under the EFTA, regardless of what her contract with Defendant may have otherwise provided. *See Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 241 (4th Cir. 2019) (holding allegation that agreement contained a stop-payment provision more restrictive than what the EFTA requires was the type of harm Congress sought to prevent when it enacted the EFTA).

### II. Defendant's Status Under Section 1693e

Defendant's primary argument in support of dismissal is that Defendant was not a party capable of violating Section 1693e(a) with respect to the facts alleged. (Doc. 6 at 5). Plaintiff does not allege that Defendant held the "personal bank account"

6

from which it withdrew funds, nor does she specify if another bank held that account. (*See* doc. 1). The Complaint states only that Defendant withdrew payments from her personal bank account (at an unnamed bank) to the unsecured loan account she held with Defendant. (Doc. 1 at 2). Defendant argues on this basis that it "is alleged to have been acting in the role of [Plaintiff's] creditor and payee, and not as the financial institution that was the holder of her bank account. That bank was PNC Bank, and therefore only PNC Bank was capable, with respect to the transactions at issue, of violating Section 1693e(a)." (Doc. 6 at 5).

As discussed above, Plaintiff's claim arises not under the first sentence of Section 1693e(a) regarding initial preauthorization, but under the second "stop payment" sentence. This distinction is important because while the language of the first sentence is not so limited, the "stop payment" provision of Section 1693e(a) applies only to "financial institution[s]." 15 U.S.C. § 1693e(a) ("A consumer may stop payment . . . by notifying the financial institution."); *Miller v. Interstate Auto Grp., Inc.*, No. 14-cv-116, 2015 WL 1806815, at *3 (W.D. Wis. Apr. 21, 2015).[4] The regulations confirm that the provision for a "[c]onsumer's right to stop payment" applies "to financial institutions," not "any person." *See* 12 C.F.R. § 205.3(a), 205.10(c).

As used in the EFTA, "the term 'financial institution' means a State or National bank, a State or Federal savings and loan association, a mutual savings

---

[4] Plaintiff's citations to case law regarding the liability of third-party payees under the first preauthorization sentence of Section 1693e(a) are not directly on point, given this distinction. (*See* doc. 9 at 10).

bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer." 15 U.S.C. § 1693a(9). "Account," in turn, is defined, in pertinent part, as "a demand deposit, savings deposit, or other *asset* account." 15 U.S.C. § 1693a(2) (emphasis added). To state the obvious, there is no dispute that Defendant is a bank. (Doc. 6 at 4). But here, where Defendant is alleged to have been a creditor *debiting* Plaintiff's personal bank account, not the bank "hold[ing]" such an asset account "belonging to [Plaintiff]," was it subject to the "stop payment" provision of Section 1693e?[5]

The Court concludes it was not. "Section 1693e(a)'s stop payment clauses refer to circumstances where a consumer requests that her financial institution stop payment from her account to a third-party payee." *Stock v. Firstmark Servs.*, No. 18-cv-01363, 2018 WL 8193373, at *5 (C.D. Cal. Dec. 12, 2018). The "Official Staff Interpretations" of the regulations further detail the interplay between the financial institution and the payee:

> 10(c) Consumer's Right To Stop Payment
>
> 1. Stop-payment order. The financial institution must honor an oral stop-payment order made at least three business days before a scheduled debit. If the debit item is resubmitted, the institution must continue to honor the stop-payment order (for example, by suspending all subsequent payments to the payee-originator until the consumer notifies the institution that payments should resume).

---

[5] An alternative way to frame this question would be to ask whether a bank is a "financial institution" within the meaning of the EFTA regardless of whether it "holds an [asset] account belonging to [the] consumer." The more natural reading of the statutory definition suggests that a bank is a "financial institution" within the definition only if it "holds an account"; the definition lists banks, credit unions, "or any *other* person who. . . holds an account," thereby implying that the non-persons within the definition also "hold accounts." *See* 15 U.S.C. § 1693a(9) (emphasis added).

8

> 2. Revocation of authorization. Once a financial institution has been notified that the consumer's authorization is no longer valid, it must block all future payments for the particular debit transmitted by the designated payee-originator . . . The institution may not wait for the payee-originator to terminate the automatic debits. The institution may confirm that the consumer has informed the payee-originator of the revocation (for example, by requiring a copy of the consumer's revocation as written confirmation to be provided within 14 days of an oral notification).

12 C.F.R. § Pt. 205, Supp. I. (emphasis added). The relative duties of the financial institution and the payee described make clear that the "financial institution" required to honor an oral stop-payment order under the EFTA is one separate and apart from the payee from whom the consumer may revoke authorization. Here, Plaintiff does not allege any facts suggesting Defendant was the "financial institution" holding her personal bank account from which the payments were drawn; she alleges Defendant was withdrawing payments that went to fulfill Plaintiff's debt obligations to Plaintiff (and that it continued to do so after she revoked authorization). (*See* doc. 1 at 2). Defendant was therefore acting as a third-party payee, not as a financial institution. *See Stock*, 2018 WL 8193373, at \*5.

Thus, because Plaintiff does not allege Defendant was "the financial institution" holding her bank account, Defendant's Motion to Dismiss is granted as to Plaintiff's claim that Defendant violated the "stop payment" provision of Section 1693e. Unless Plaintiff can allege facts that Defendant was her "financial institution," she will be unable to state a claim against it under the "stop payment" provision. However, because the Complaint does not specify where her personal bank account was held and therefore does not facially foreclose the possibility that amendment

could cure the deficiency, *Barry Aviation v. Land O'Lakes Mun. Airport* Comm'n, 377 F.3d 682, 687 (7th Cir. 2004), dismissal of this claim will be without prejudice.

### III. "Unauthorized Electronic Fund Transfer"

Finally, Defendant argues Plaintiff fails to state a claim that Defendant made an "unauthorized electronic fund transfer" under the EFTA. (Doc. 6 at 10). Plaintiff responds that Defendant confuses the authorization requirements under Section 1693e with the "unauthorized electronic fund transfer" prohibitions under Section 1693a, which are "not at issue here." (Doc. 9 at 13). Because Plaintiff's response concedes she does not purport to bring any claim regarding "unauthorized electronic fund transfers," the Court need not address the substance of Defendant's argument on this point. The Court also declines to consider any of the documents attached to Defendant's Motion to Dismiss at this stage in the proceedings.

### CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 5) is GRANTED. The Complaint (doc. 1) is dismissed without prejudice. To the extent Plaintiff is able to cure the deficiencies identified herein, Plaintiff may file a second amended complaint within twenty-one (21) days of this Order.

SO ORDERED.

Entered this 21st day of May 2021.

                                               s/ Joe B. McDade
                                               JOE BILLY McDADE
                                               United States Senior District Judge